IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TERRY LEE BLACKBURN,  :
    Plaintiff  :  CIVIL ACTION NO. 3:CV-12-00021
      :
v.  :
      :  (Judge Nealon)
CAROLYN W. COLVIN,  :
Acting Commissioner of Social Security,  :
    Defendant  :

**MEMORANDUM**

FILED
SCRANTON
JUL 1 9 2013
PER _____ DEPUTY CLERK

    The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Terry Lee Blackburn's claim for social security disability insurance benefits and supplemental security income benefits. For the reasons set forth below, the decision of the Commissioner will be affirmed.

    Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." Blackburn met the insured status requirements of the Social Security Act through March 31, 2013. (Tr. 76, 78).

    Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income. Insured status is irrelevant in determining a claimant's eligibility for supplemental security income benefits. However, there are other eligibility requirements relating to an applicant's financial situation which must be met.

    Blackburn was born on March 20, 1963. (Tr. 110, 112, 136). He completed eleventh grade but did not graduate high school. (Tr. 56). He worked as a carnival ride operator and

stopped working due to breathing and heart problems. (Tr. 53-55).

Blackburn protectively filed applications for disability insurance benefits and supplemental security income on November 17, 2009, alleging disability since July 1, 2008 due to chronic obstructive pulmonary disease ("COPD"), heart pain, irregular heart rate, shortness of breath and high blood pressure. (Tr. 110-18, 136, 140). After his request for benefits was denied at the initial level, he filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 87-104). A hearing was held on February 16, 2011. (Tr. 49-69). The ALJ issued a decision on February 25, 2011 denying Blackburn benefits. (Tr. 73-86). Blackburn then requested review by the Appeals Council which, by Notice of Action dated November 30, 2011, denied review, making the decision of the ALJ final. (Tr. 1-5).

On January 4, 2012, Blackburn filed a complaint seeking review of the Commissioner's denial of his application for Social Security disability benefits. (Doc. 1). The Commissioner filed an answer to the complaint and a copy of the administrative record on March 7, 2012. (Docs. 8, 9). Blackburn filed the brief in support of his appeal on April 20, 2012, and the Commissioner filed his brief on May 17, 2012. (Docs. 10, 11). The matter is ripe for disposition and, for the reasons set forth below, the Commissioner's decision will be affirmed.

**Standard of Review**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those

2

findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from

its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability insurance and

supplemental security income claims. See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

## Discussion

The ALJ proceeded through the sequential evaluation process and determined that Blackburn was not disabled. (Tr. 78-83). At step one, the ALJ found that Blackburn had not engaged in substantial gainful work activity since July 1, 2008, the alleged onset date. (Tr. 78).

At step two, the ALJ found that Blackburn suffered from the severe impairments of

5

congestive heart failure, chronic obstructive pulmonary disease and obesity. (Tr. 78-79). The ALJ also found that Blackburn's depression and hypertension were not severe impairments.[1] (Tr. 78-79).

At step three of the sequential evaluation process, the ALJ found that Blackburn did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 79).

At step four of the sequential evaluation process, the ALJ determined that Blackburn had the residual functional capacity to perform a range of light work, limited to simple, unskilled work, and he should avoid exposure to fumes, odors, gases and poorly ventilated areas. (Tr. 79-82). The ALJ then found that Blackburn was capable of performing his past relevant work as a carnival ride operator. (Tr. 82-83).[2] Blackburn was therefore found to be not disabled under the Act from July 1, 2008 through the date of the ALJ's decision. (Tr. 83).

In his appeal brief, Blackburn argues that the ALJ erred by finding that he did not meet Listing 4.02, and erred in determining that he could perform his past relevant work. (Doc. 10). Upon review, this Court finds no merit in Blackburn's arguments.

Listing 4.02 provides as follows:

---

1. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

2. The vocational expert also testified that Blackburn would be capable of performing work as a ticket seller, cafeteria cashier and counter clerk. (Tr. 67).

> 4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.
>
> A. Medically documented presence of one of the following:
>
>   1. Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or
>
>   2. Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);
>
> AND
>
> B. Resulting in one of the following:
>
>   2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c)[.]

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02.

Blackburn notes that he had a cardiac catheterization on October 25, 2009 that showed idiopathic dilated cardiomyopathy with ejection fraction of 15% to 20% with COPD exacerbation. (Doc. 10, pg. 6; Tr. 212). Blackburn also notes that he was hospitalized due to cardiac distress on September 9, 2009, October 25, 2009, January 19, 2010 and October 6, 2010. (Doc. 10, pg. 6).

Defendant argues that the ALJ correctly determined that Blackburn did not meet Listing

4.02. (Doc. 11, pgs. 13-18). Defendant states that Blackburn has failed to show that he meets the introductory language of Listing 4.02, subsection 4.02A1, or subsection 4.02B2. (Doc. 11, pg. 15).

The ALJ stated that he "considered the listings, including sections 3.00 et seq., and 4.00 et seq. and is not persuaded that the claimant meets or equals any of these listings." (Tr. 79). The introductory language requires "[c]hronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2[3]." 20 C.F.R. Pt. 404, Subpt. P, App.

---

3. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.00D2 requires:

> a. Cardiomegaly or ventricular dysfunction must be present and demonstrated by appropriate medically acceptable imaging, such as chest x-ray, echocardiography (M–Mode, 2–dimensional, and Doppler), radionuclide studies, or cardiac catheterization.
>
> (i) Abnormal cardiac imaging showing increased left ventricular end diastolic diameter (LVEDD), decreased EF, increased left atrial chamber size, increased ventricular filling pressures measured at cardiac catheterization, or increased left ventricular wall or septum thickness, provides objective measures of both left ventricular function and structural abnormality in heart failure.
>
> (ii) An LVEDD greater than 6.0 cm or an EF of 30 percent or less measured during a period of stability (that is, not during an episode of acute heart failure) may be associated clinically with systolic failure.
>
> (iii) Left ventricular posterior wall thickness added to septal thickness totaling 2.5 cm or greater with left atrium enlarged to 4.5 cm or greater may be associated clinically with diastolic failure.
>
> (iv) However, these measurements alone do not reflect your functional capacity, which we evaluate by considering all of the relevant evidence. In some situations, we may need to purchase an ETT to help us assess your functional capacity.
>
> (v) Other findings on appropriate medically acceptable imaging may include increased pulmonary vascular markings, pleural effusion, and pulmonary edema. These findings need not be present on each report, since CHF may be controlled by prescribed treatment.
>
> b. To establish that you have chronic heart failure, your medical history and physical

8

1, § 4.02. The ALJ noted that the medical evidence reveals that Blackburn was noncompliant with his treatment, he failed to attend follow-up examinations with physicians and failed to undergo further testing. (Tr. 80). Blackburn was advised on numerous occasions to quit smoking and lose weight. (Tr. 80). On September 9, 2009, Blackburn admitted that he was not taking medication and was not followed by a physician, stating that he had not seen a physician in 20-30 years. (Doc. 11, pg. 15; Tr. 81, 197, 209, 376). In October 2009, it was noted that Blackburn was not compliant with his inhaled bronchodilators. (Doc. 11, pg. 15; Tr. 220). In January 2010, Blackburn was again described as a noncompliant patient, he did not have control of his diet or exercise, and he did not comply with his medication regimen. (Doc. 11, pgs. 15-16; Tr. 354, 360). On January 19, 2010, there was evidence of peripheral edema and bilateral leg swelling. (Doc. 10, pg. 7; Tr. 356-57). Although the evidence suggested that Blackburn had some of the signs and symptoms listed in section 4.00D2, he was not compliant with treatment as required by the introductory language of Listing 4.02.

---

> examination should describe characteristic symptoms and signs of pulmonary or systemic congestion or of limited cardiac output associated with the abnormal findings on appropriate medically acceptable imaging. When an acute episode of heart failure is triggered by a remediable factor, such as an arrhythmia, dietary sodium overload, or high altitude, cardiac function may be restored and a chronic impairment may not be present.
>
> (i) Symptoms of congestion or of limited cardiac output include easy fatigue, weakness, shortness of breath (dyspnea), cough, or chest discomfort at rest or with activity. Individuals with CHF may also experience shortness of breath on lying flat (orthopnea) or episodes of shortness of breath that wake them from sleep (paroxysmal nocturnal dyspnea). They may also experience cardiac arrhythmias resulting in palpitations, lightheadedness, or fainting.
>
> (ii) Signs of congestion may include hepatomegaly, ascites, increased jugular venous distention or pressure, rales, peripheral edema, or rapid weight gain. However, these signs need not be found on all examinations because fluid retention may be controlled by prescribed treatment.

Subsection 4.02A1 requires an "ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02A1. The ALJ acknowledged that Blackburn had an ejection fraction of 15% to 20% on October 25, 2009; however, it occurred during a catheterization when Blackburn went to the emergency room with complaints of shortness of breath. (Doc. 11, pg. 16; Tr. 80, 216, 220, 254-55). Therefore, it did not occur during a period of stability, as required by subsection 4.02A1. (Doc. 11, pg. 15).

Blackburn was admitted to the hospital on October 6, 2010 and diagnosed with shortness of breath and cough secondary to chronic obstructive pulmonary disease exacerbation, chronic obstructive pulmonary disease, hypertension, history of congestive heart failure, non-ischemic cardiomyopathy, with an ejection fraction of 15%-20%, hepatitis C, and questionable basal cell carcinoma of the left lower eyelid. (Tr. 36, 42-43). It was noted that a cardiac catheterization in October 2009 did not reveal any significant coronary artery disease. (Tr. 38).

An October 7, 2010 chest x-ray revealed a mildly enlarged left ventricle with no other abnormalities and an ejection fraction within normal limits. (Doc. 11, pg. 15; Tr. 33).

Defendant states that when Blackburn was fully compliant with his medications, Dr. Roe noted on November 17, 2010 that he had a MUGA scan which showed "near normal" left ventricle systolic function. (Doc. 11, pg. 15; Tr. 442).

Regarding subsection 4.02B2, Defendant argues that Blackburn did not meet this subsection because he did not have "[t]hree or more separate episodes of acute congestive heart failure within a consecutive 12-month period..., with evidence of fluid retention." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02B2. Defendant argues that Blackburn did not meet the fluid

retention requirement during three hospitalizations. (Doc. 11, pg. 17; Tr. 199). On September 9, 2009, Blackburn went to the hospital with complaints of shortness of breath for the previous six weeks. (Tr. 197-200, 313-19). Upon examination, he had a chronic cough, wheezes, rales and rhonchi in all lung fields, and +1 edema to just below the knees bilaterally. (Tr. 319). On discharge, he was diagnosed with resolved acute bronchitis, COPD, congestive heart failure with systolic dysfunction of the left ventricle with an ejection fraction of 35%, hypertension, tobacco abuse disorder, morbid obesity and hepatitis C. (Tr. 313). Defendant argues that Blackburn's wheezes, rales and rhonchi on September 9, 2009 were during a period of noncompliance and there was no edema noted during that hospitalization. (Doc. 11, pg. 17; Tr. 199).

Blackburn was admitted to the hospital on October 25, 2009 for three days with complaints of shortness of breath and a productive cough. (Tr. 212-19). He was diagnosed with idiopathic dilated cardiomyopathy with ejection fraction of 15% to 20%, COPD exacerbation, hypertension, tobacco abuse and obesity. (Tr. 212, 254, 275). Blackburn was described as a "very noncompliant" patient. (Tr. 213). A chest x-ray on October 25, 2009 showed no active disease and no significant change compared to the September 9, 2009 x-ray. (Tr. 256). A stress test on October 27, 2009 was negative. (Tr. 251-53).

In January 2010, Blackburn went to the hospital with complaints of shortness of breath. (Tr. 354). It was noted that he was a noncompliant patient. (Tr. 354). He was scheduled for sleep studies and pulmonary function tests, but he missed the appointments. (Tr. 354). Blackburn was diagnosed with bronchitis, congestive heart failure, questionable COPD, hypertension, tobacco abuse, obesity, sleep apnea, hepatitis C infection, and questionable basal cell carcinoma involving the left lower eyelid. (Tr. 354). On January 19, 2010, Blackburn again

complained of shortness of breath and had bilateral leg swelling. (Tr. 356-57).

Defendant notes that no physician has stated that Blackburn met any of the listings, including Listing 4.02. (Doc. 11, pg. 17). Dr. Ramakrishnan filled out a disability form on September 24, 2009 and found that Blackburn was temporarily disabled for a three month period from September 28, 2009 to December 28, 2009. (Tr. 289). Notably, Dr. Ramakrishnan did not find that Blackburn was permanently disabled.

Mark Bohn, M.D., completed a Physical Residual Functional Capacity Assessment on February 5, 2010 and diagnosed Blackburn with congestive heart failure, COPD, obesity and high blood pressure. (Tr. 302-08). Dr. Bohn noted that a catheterization and echocardiogram showed congestive heart failure, but during exacerbations only. (Tr. 307). He noted that Blackburn maintains the ability to care for himself and his home and that his treatment has been routine and conservative. (Tr. 307). Dr. Bohn also noted that Blackburn has not seen his treating physician frequently, he does not attend physical therapy, he does not need an assistive device to ambulate, and he has taken medications which are effective in controlling his symptoms. (Tr. 307). Dr. Bohn ultimately determined that Blackburn is capable of performing a range of light duty work. (Tr. 303-05).

Upon review, substantial evidence supports the ALJ's determination that although Blackburn has severe impairments, they do not meet the listing of impairments.

Blackburn next argues that his testimony regarding his limitations should be found credible. (Doc. 10, pg. 7). Government counsel argues that the ALJ's credibility analysis was proper. (Doc. 11, pgs. 18-20).

"'[A]n ALJ's findings based on the credibility of the applicant are to be accorded great

weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.' Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991) ('We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility.')." Frazier v. Apfel, 2000 WL 288246 (E.D. Pa. 2000). The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. 20 C.F.R. § 404.1529. First, symptoms, such as pain, shortness of breath, fatigue, et cetera, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. § 404.1529(b). Once a medically determinable impairment that results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. § 404.1529(b). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. § 404.1529(b). Social Security Ruling 96-7p gives the following instructions in evaluating the credibility of the claimant's statements:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

SSR 96-7p.

The ALJ reviewed the medical records and the treating and examining physicians' notes. (Tr. 80-83). He also considered Blackburn's testimony regarding his pain and daily activities and capabilities. (Tr. 80). At the hearing, Blackburn testified that he cannot work due to problems with his lungs, breathing problems and heart problems. (Tr. 56). He takes oxygen to help with his breathing, he experiences dizziness, has chest pain, and can walk about two blocks. (Tr. 58-59). The ALJ noted that Blackburn lives alone, takes care of his apartment, cooks, cleans, and takes care of his personal needs, but he does not have a driver's license. (Tr. 80, 82).

While determining that Blackburn suffers from the impairments claimed, the ALJ found that the limitations resulting therefrom were overstated. The ALJ noted that Blackburn's complaints "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 82). By evaluating the extent to which Blackburn's subjective complaints were reasonably consistent with the objective medical evidence, the credibility analysis was proper and the assessment is supported by substantial evidence. See Blue Ridge Erectors v. Occupational Safety & Health Review Com'n, 261 Fed. Appx. 408, 410 (3d Cir. 2008) (quoting St. George Warehouse, Inc. v. NLRB, 420 F.3d 294, 298 (3d Cir. 2005) ("[T]he ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable.")).

Blackburn next argues that the ALJ erred in finding that he is capable of performing his past relevant work. (Doc. 10, pg. 7). Blackburn states that the vocational expert testified that he would not be able to perform his past relevant work if he required a sit/ stand option. (Doc. 10,

14

pg. 7; Tr. 66). Blackburn therefore argues that a sit/ stand option should have been considered in determining his residual functional capacity assessment. (Doc. 10, pgs. 7-8). He also argues that he would be off-task 20% of the time, which would preclude him from performing any substantial gainful employment. (Doc. 10, pg. 8).

Defendant argues that Blackburn failed to meet his burden at step four and he did not present any evidence indicating that could not perform his past work as a carnival ride operator. (Doc. 11, pg. 21). Defendant also argues that the hypothetical questions included the impairments supported by the record. (Doc. 11, pgs. 21-22).

A hypothetical question must include all of a claimant's impairments which are supported by the record. Ramirez v. Barnhart, 372 F.3d 546, 553-55 (3d Cir. 2004); Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). One which omits limitations is defective and the answer thereto cannot constitute substantial evidence to support denial of a claim. Id. However, "[w]e do not require an ALJ to submit to the vocational expert every impairment alleged by a claimant." Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005) (emphasis in original).

At the hearing on February 16, 2011, the vocational expert testified that Blackburn would be capable of performing his past relevant work as a carnival ride operator, which is considered light duty, unskilled work. (Tr. 65-69). When an ALJ's hypothetical question to a vocational expert sets forth the Plaintiff's limitations, as supported by the record, the vocational expert's response may be accepted as substantial evidence in support of the ALJ's determination that the Plaintiff is not disabled. See Chrupcala, 829 F.2d at 1276. Therefore, the vocational expert's response, that Blackburn is capable of performing his past relevant work, constitutes substantial

evidence in support of the ALJ's determination that the Plaintiff was not disabled under the Act. (Tr. 82-83).

Based upon the evidence of record and the testimony at the hearing, the ALJ concluded that Blackburn has the residual functional capacity to perform a range of simple, unskilled, light work and that he should avoid exposure to fumes, odors, gases, and poorly ventilated areas. (Tr. 79-82). Light work is defined in the Social Security Regulations as follows:

> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967. This definition, with the added restrictions, encompasses Blackburn's past relevant work as a carnival ride operator. (Tr. 82-83).

After review of the administrative record, it is determined that the decision of the Commissioner is supported by substantial evidence. Therefore, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner will be affirmed. An appropriate order follows.

**Date:** July 19, 2013

_____
**United States District Judge**